## Soules & Sherman *v.* Oscar A. Burton.

### *Partnership.  Evidence.  Memorandum.*

The main point in controversy between the plaintiff and the defendant, was whether the defendant was a co-partner of the plaintiff.  The plaintiff offered in evidence a letter written by himself containing a remark tending to prove the co-partnership, which he testified was written by the direction of the defendant, which the defendant denied.  The defendant did not see the letter after it was written.  *Held*, that the letter was legitimately before the court as a memorandum bearing on the question whether the defendant in fact said to the plaintiff what the plaintiff testified he did, although the letter itself, as an independent instrument of evidence, was not competent to prove that fact.

Where one member of a partnership personally participates in a transaction within the scope of the partnership business, which results in a loss, he cannot then be relieved from sharing in the loss on the ground that the original advance of money in the transaction was without his knowledge, consent or direction.

Account.  The case was referred by consent of parties and the referees reported substantially as follows, to wit : That on the 23d day of October, 1855, the plaintiffs were and had been for about a month previous thereto, partners in the business of buying and selling butter, cheese, beans and wool and other kinds of

country produce, under the firm name of Soules & Sherman, at St. Albans, Vt.; that on said 23d day of October, the defendant proposed to the plaintiffs to enter into an arrangement with them to buy $20,000. or $30,000. worth of butter to hold and sell when they thought advisable; that the defendant would furnish the money at the Franklin County Bank and see to it that the debt was carried by the bank until the butter was sold; that the plaintiffs should purchase the butter, and that the plaintiffs and the defendant should share equally in the enterprise; that the proposition was made by the defendant to A. G. Soule in the Franklin County Bank and accepted by him, and agreed to by the other plaintiffs the same day; that it was agreed that A. G. Soule should take what money he wanted and go over the lake to purchase butter, and that more money should be sent to him whenever he should telegraph for it; that the defendant was president and A. G. Soule was one of the directors of said bank at that time; that the defendant told the cashier and teller to let said Soule have what money he wanted; that he took $3000. on the 24th day of October, 1855, without at that time giving any written voucher, and went over the lake and bought butter, and on the 26th day of said month telegraphed to the bank for $2000. more, which the cashier sent him; that when A. G. Soule returned he gave the cashier a check for $3000., signed by the company name of Soules & Sherman, dated October 24th, 1855; that on the 15th day November, 1855, all the checks drawn by the plaintiffs for the purchase of butter were charged to the account of the plaintiffs by the bank by agreement of the plaintiffs and the defendant, the defendant saying it would make no difference—he agreeing that the bank should carry the debt, or he would take care of the paper until the butter was sold; that after the plaintiffs had thus purchased $31,451.22 worth of butter, on the 18th day of January, 1856, the plaintiffs settled their account at the said bank, the defendant being present, aiding, assisting and directing in the settlement; that there was found due the bank on the butter account $18.000.; that the plaintiffs gave their note for $9000., and it was agreed that the plaintiffs should draw on commission houses in Boston and on

parties against whom they had nothing to draw for the purpose of settling the bank account, the defendant saying it would make no difference, he wanted the bank account settled, and that he would take care of the drafts ; and the account was settled by putting these drafts to the credit of said account, and these drafts and the full amount of the expense and cost of said butter was paid by the plaintiffs.

The referees further reported that one Burgess, an agent for buying butter for these parties and other property for the plaintiffs, advanced to B. L. & I. G. Hitchcock, of Cornwall, Canada West, $480., for the purpose of purchasing butter to go into the contract of these parties, on which advancement Burgess received butter to the amount of $158.22 ; that on the 10th day of December, 1855, B. L. Hitchcock, one of the firm of B. L. & I. G. Hitchcock, telegraphed " to Soule & Burgess," meaning A. G. Soule and J. J. Burgess, saying, as follows : " Can buy 90 kegs good butter at 23 cents delivered at Montreal. Shall I buy ? " A. G. Soule took the despatch to the defendant and said to him that the Hitchcocks had bought butter for him, and that he had advanced them some money, and requested the defendant to dictate the reply, and he did, saying : " Yes, if good and sweet ; " that this butter turned out to be inferior in quality and the said parties declined to receive it, and thereby lost the balance of the $480 advanced to the Hitchcocks, although effort was made by these parties to recover it ; that the defendant gave directions in respect to what lots of butter to buy and when to forward it to market, &c. ; that the parties sustained a loss of $4268.56, one half of which, with the interest to April 8th, 1862, amounted to $2883.41 ; and that the plaintiffs and defendant were partners in the purchase of butter.

In trying and determining this case the referees reported that they tried and decided it according to the rules of law.

It appeared that the main controversy between the parties was the question of partnership between the plaintiffs and the defendant.

It was not claimed that there were any written articles or memorandum of articles of co-partnership between the parties—

the whole testimony was oral and conflicting, except letters which were referred to by the referees.

The plaintiffs offered in evidence a letter written by R. R. Sherman to A. G. Soule, dated November 3d, 1855, as evidence tending to prove a co-partnership between the plaintiffs and the defendant; to the introduction of which the defendant objected, but the referees overruled the objection and admitted it in evidence in connection with R. R. Sherman's testimony; and the following sentence in the letter, to wit: " Burton thinks we had better stop—unless we can get for 20 to 22 he says he will not risk it," was considered by the referees as evidence tending to prove a co-partnership between the plaintiffs and the defendant, —Sherman having testified that he wrote that portion of said letter by the direction of the defendant; but the letter was not shown to the defendant by Sherman after it was written; and the referees did not find from the proof without the letter that Sherman was authorized to write it.

Upon the report and exceptions thereto by the defendant, the court, April Term, 1862, ALDIS, J., presiding, rendered judgment for the plaintiffs, *pro forma*, for the largest sum reported, with interest on that sum from the time computed by the referees. Exceptions by the defendant.

*Levi Underwood* and *E. A. Sowles*, for the defendant.

*Henry J. Edson* and *H. R. Beardsley*, for the plaintiffs.

BARRETT, J.   The question most pressed upon our consideration is that as to the admission of the letter of Sherman to Soule, November 3rd, 1855.  Sherman and Burton were both witnesses. The main point in controversy was whether Burton was a partner in the business in question.  The history of the transactions of the respective parties in the prosecution of that business was shown by the evidence as bearing upon the point in dispute.

That letter was an incident in the course of said transactions. The paragraph in question stated, as a fact, that Burton had

said a certain thing to Sherman. The letter itself, as an independent instrument of evidence, was not competent to prove that fact. The fact, however, was properly proveable. It was competent for Sherman to swear that Burton told him what was contained in that paragraph. He did so swear. Burton denied it. The point then was, which was correct? It was at, and upon *this point alone*, that the letter comes in question. It was a question of credibility as between the two, as depending on the correctness of their recollection, or honesty. And a matter of this kind is always to be solved upon the former ground, when it can be, rather than upon the latter—upon the ground of an honest mistake or failure of memory, rather than upon the ground that either, party is guilty of perjury.

Was it competent for the party to refer to, and show some collateral, or incidental act in relation to or connected with, or consequent upon the controverted fact, for the purpose of evincing the correctness of his recollection, and his testimony in respect thereto?

We understand it to be of every day's occurrence in the trial of cases, when questions of this kind arise, involving the correctness of recollection, and particularly as to what was said upon a given occasion, for witnesses to state that they made and have a memorandum, and to produce it, and state the time, occasion, and circumstances under which it was made, and for the memorandum, with the oral testimony connected with the subject, to go to the jury, or other trier of the case; and this we understand to be fully warranted by a great number of adjudged cases, which may be found by reference to 1 Greel. Ev. § 436 and seq. and notes; and to 1 Phil. Ev. C. & H. Notes, n. 210 and 273; 4 *ib.* n. 373.

Though the manner in which this question is presented by the report seems somewhat calculated to beget the impression that the letter itself was received as the primary and superior evidence, still we are satisfied that it was in fact received, and was operative only for the legitimate purpose of bearing upon the only question upon which it was of any importance, viz: whether Burton, in fact, said to Sherman what Sherman testified

he did. For that fact was alone of importance, and operative upon the question whether there was a partnership or not. If Sherman had testified to the fact, and had not been contradicted by Burton or otherwise, it would have had its full force, and just as much so, even though it had not been put in writing. Its being put in writing gave it no additional force.

The writing, in connexion with the testimony of Sherman, bears only on the question whether Burton said as Sherman testified. When the writing is produced, it becomes the subject of examination and consideration, as to its character as a memorandum of what was said, having reference to its contents, the time when it was made, its relation to occasion and circumstances; and if, upon the whole, it is found to have been made at such a time, and in such a manner, and upon such occasion, and under such circumstances, as concur and coincide with the main fact, it has a legitimate tendency to assure the correctness of the recollection of the party as to the happening of the main fact.

We understand that it was precisely in this view, that the referees mean to be understood in saying that, independent of the letter, they did not find that Sherman was authorized to write the letter—that they did not find from the proof without the letter that Sherman was authorized to write it,—which expression we translate thus : that independently of the memorandum which the letter constitutes, standing upon the oral testimony of Sherman, unaided by the memorandum, as against the testimony of Burton, they did not find that Burton said to Sherman, what Sherman testified he did, but upon that oral testimony in connexion with that memorandum, they did find that Burton did so say. This being so, of course, it could be of no importance whether they considered the written language of the letter, or the same language embodied in one real expression of the witness, as evidence tending to prove a co-partnership of the parties.

The letter was legitimately before them as a memorandum, bearing on the question whether Burton in fact said what is stated in the letter. When they had found that fact, the con-

sideration and effect of it were not subject to be affected by the manner in which it had been proved.

As we are satisfied that the letter was properly received, under the views above presented, we refrain from any discussion of questions made as to this being a general rule of reference, and as to the consequences of the referees erring in matter of law, when they intended to try and decide the case according to the rules of law.

It is plain from the report that the referees found that the partnership in question consisted of Burton, as one partner, and the firm of Soule and Sherman, as the other, and that, as between said partners, the results of the business was to be shared equally. The language, in setting forth the arrangement which constituted said partnership, is entirely consistent with this view; and the summing up of the loss, and the division made of it in finding the balance for which Burton is to be held liable, is conclusive as to what the referees mean in their report on this subject.

It is claimed that the item of money advanced to the Hitchcocks should not be embraced in this accounting. Though that money was advanced without Burton's knowledge, still it was so advanced in good faith in the prosecution of the business of the partnership. The fact very soon came to his knowledge, when, instead of disclaiming and repudiating it, his conduct in respect to it was a practical adoption and approval of it. After having knowingly taken his chances of benefit from the transaction, and as a partner personally participated in a specific appropriation of it for a certain lot of butter, and also in an endeavour to get the balance of the money back after it was determined not to take the butter for which that money was to go in payment, it is quite too late to fall back upon the fact that the original advance was made without his knowledge, consent, or direction.

We are satisfied that the defendant ought to be chargeable with the largest sum found by the referees.

The judgment of the county court is, therefore, affirmed.